UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TAMMIE L. ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:20-CV-283-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Tammie Rogers appeals the Social Security Administration's decision to deny her application for disability benefits. The ALJ found that Rogers, who is now 53 years old, had multiple severe impairments: obesity, chronic obstructive pulmonary disease (COPD), asthma, urge incontinence/stress incontinence, polyarthritis, depression, bipolar disorder, and anxiety. But the ALJ determined that none of these impairments were automatically disabling, and she went on to determine that Rogers had the residual functional capacity (RFC) to perform both a reduced range of light work and her past relevant work. [Tr. 19.][1] Because the ALJ's opinion is supported by substantial evidence, I will affirm the ALJ's decision.

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 14.

**Discussion**

I'll start, as usual, with the standards that govern my decision-making in this appeal. My job is not to determine from scratch whether or not Rogers is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). So the review is a light one, and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

While I don't typically rehash the five-step inquiry to evaluate claims for disability benefits, it is worthwhile in this case to remember what the Commissioner needs to evaluate:

> (1) [W]hether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [she] can perform [her] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).  It is even more important to keep in mind that Rogers bears the burden of proof at every step, except step five.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

      Both Rogers' opening brief and her reply are skeletal.  As best I can tell they set forth three general arguments in support of remand: (1) the ALJ failed to properly analyze whether Rogers' impairments met or equaled a listing; (2) the ALJ improperly analyzed the treating physician's opinion; and (3) the ALJ's RFC is unsupported.  [DE 16 at 6-7.]  Rogers did set forth some clinical findings in her opening brief.  But after that, the argument section of her brief is basically two pages long, and marked by undeveloped and conclusory arguments, with only one citation to the factual record and only one mention of a case (and this was only a reference to the case name - not even the case citation).  Rogers' reply contains no citations to the record or to any case law.  This is simply insufficient.  *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.").  Nevertheless, I've still conducted a review of the administrative record (including the medical records and Rogers' hearing testimony), and to the greatest extent possible (but being hampered by Rogers' perfunctory briefing), have evaluated Rogers' arguments on the merits.

**I.      Did the ALJ Properly Analyze Whether Rogers' Impairments Met or Equaled a Listing?**

To assert that she is disabled at step three of the five-step inquiry, a claimant "first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). Rogers takes issue with the ALJ's determination that she did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment, claiming the finding "is unsupported with respect to medical equivalence." [DE 16 at 6.]  But Rogers has not presented *any* medical evidence of equivalence, nor has she suggested a listing that she thinks her situation is equivalent to.  "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).  Rogers has not pointed to any such evidence.

Here, the ALJ found that Rogers did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [Tr. 13-14.]  In making this finding, the ALJ noted that no treating or examining physician had opined that a listing was met or equaled, plus, she discussed specific listings and persuasively demonstrated why the requirements were not met. [Tr. 13.]  In her reply, Rogers implies this is unfair because "Plaintiff lacked access to appropriate medical care." [DE 18 at 1.]

4

While I am sympathetic to this argument, the burden nonetheless remains with Rogers at this stage.

In my view, the ALJ actually did a commendable job of addressing and considering various listings including Listing 1.02 (dysfunction of a joint), 3.02 (chronic pulmonary disorder), 3.03 (asthma), and 5.08 (weight loss due to any digestive order). [Tr. 13.] Listing 1.02, major dysfunction of a joint, is satisfied when there is a major dysfunction of a joint in either one major peripheral weight-bearing joint, or the involvement or one major joint in upper extremity which results in an inability to perform fine and gross movements effectively as defined in Listing 1.00B2c. *See Brown v. Astrue*, No. 3:07-cv-99-WGH-RLY, 2009 WL 722299, at *12 (S.D. Ind. Mar. 18, 2009). Here, the ALJ considered, and cited to the record in support, finding the record failed to document an inability to perform fine or gross movements as described in 1.00B2c. The ALJ also appropriately noted the record didn't include pulmonary testing at or below listing levels or the frequency of exacerbation treatment required by Listing 3.02 for chronic pulmonary disorder. *Id.* And Rogers' BMI remained above obesity levels throughout the relevant period, so she did not meet the listing for weight loss due to a digestive disorder (5.08). *Id.* The ALJ also correctly recognized that Rogers' obesity caused or contributed to other impairments, and the effect her weight had "on her ability to ambulate as well as her other body systems." *Id.*

The ALJ went on to find the severity of Rogers' mental impairments, considered singly and in combination, did not meet or medically equal Listings 12.04 (mood

5

disorders) and 12.06 (anxiety disorders). [Tr. 13.] The ALJ appropriately recognized that to meet these listings, a claimant must show one extreme or two marked limitations in broad areas of functioning which are: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; or 4) adapting or managing themselves. [*Id*; 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04B, 12.06B.]

At great length, and referring to documents in the record, the ALJ found moderate limitations in understanding, remembering, or applying information, noting Rogers lived alone with no significant assistance, did chores, managed her own personal finances, took her medication, and could follow instructions. [Tr. 14, 39-69, 240-41, 250-59.] The ALJ also found she was moderately limited regarding interacting with others, noting Rogers alleged difficulty interacting with larger groups of people (she doesn't like to be around more than 4 or 5 people), but she interacted with her friends, played cards, and could go to other people's houses and stores. *Id.* As for the issue of concentrating, persisting, or maintaining pace, the ALJ found a moderate limitation, noting that Rogers had some moderate difficulties managing her household but was still able to live alone, she could play cards, follow written and spoken instructions, read the Bible, and watch television programs. *Id.* In adapting or managing oneself, the ALJ pointed out that Rogers managed her personal hygiene and household and that her complaints in those areas related to physical pain, not mental impairments. *Id.* Having found no marked or extreme limitation, the ALJ

6

appropriately concluded that Rogers did not meet these listings, and substantial evidence supports her conclusion.

Medical equivalence was also considered by the ALJ. State agency psychological consultants Dr. Larsen and Dr. Neville reviewed the medical evidence and opined that Rogers had no severe mental impairment at all, let alone an impairment that met or equaled a listing. [Tr. 74-76, 84-85, 96-97, 105-06.] Additionally, state agency medical consultants Dr. Montoya and Dr. Corcoran reviewed the medical evidence and opined that Rogers had no severe physical impairment at all, let alone an impairment that met or equaled a listing. [Tr. 74, 83, 95-96, 104-05.] So there is substantial evidence supporting the ALJ's conclusion that Rogers' impairments did not medically equal a listing.

As I mentioned before, Rogers has not identified any listing that her impairments supposedly meet or equal, or identified any expert opinion that her impairments met or equaled a listing. Merely concluding that the ALJ's determination was "unsupported with respect to medical equivalence" isn't going to cut it. [DE 16 at 6.] "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant."). Moreover, judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing

7

information that might benefit the party whose briefs provided no clue of where to dig." *Herrmann v. Astrue*, No. 07 C 6914, 2010 WL 356233, at *2 (N.D. Ill. Feb. 1, 2020); *see also Crump v. Berryhill*, No. 3:17-cv-557, 2018 WL 4627217, at *2 (N.D. Ind. Sept. 27, 2018) (vacated and remanded on other grounds) ("[I]t is not the Court's obligation to scour the record in search of such evidence."*).*

Although Rogers criticizes the ALJ for relying too heavily on Rogers' ability to live alone and complete chores, as I covered earlier in this opinion, the ALJ explored a variety of evidence in support of her step three findings, and Rogers' daily activities were only part of this consideration. [Tr. 13-14.] More importantly, Rogers hasn't pointed to any evidence that *could* support a finding that her impairments met or equaled a listing.

**II.      Did The ALJ Properly Weigh the Treating Physician's Opinion?**

Rogers argues the ALJ failed to properly evaluate and weigh the opinion of treating source, Dr. Kelly, because she failed to discuss the frequency of treatment and treating relationship of nearly ten years. [DE 16 at 7.]   It is clear that Rogers is arguing that the ALJ failed to abide by what used to known as the "treating physician rule." Under earlier regulations, an ALJ had to give controlling weight to a treating source's opinion if it was "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 404.1527), and "[i]f an ALJ d[id] not give a treating physician's opinion controlling weight, the regulations *require[d]* the ALJ to

8

consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted).

However, a few years ago, the Social Security Administration jettisoned the "controlling weight" instruction that used to be given for the treating physician. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting the treating physician rule applies only to claims filed before March 27, 2017). Because Rogers filed her application on January 4, 2018, the treating physician rule does not apply to her.

Under the new paradigm, an ALJ must consider *all* medical opinions based on a number of factors including supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(b), (c). Although the ALJ must consider all of these factors, she need only explain how she considered supportability and consistency. 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *see Mazza v. Saul*, No. 19-CV-1724, 2020 WL 6909308, at *5 (E.D. Wis. Nov. 24, 2020). The regulations recognize that "[t]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2); 416.920c(a). "Therefore, we will explain how we considered the

9

supportability and consistency factors from a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2); 416.920c(b)(2). The ALJs may, but are not required, to explain the other factors (including relationship with the client and specialization).

Here, the ALJ absolutely considered the supportability and consistency of Dr. Kelly's opinion. Here's what she said:

> In July 2018, Dr. Kelly, a treating physician, opined that the claimant could sit for 4 hours in an 8-hour workday; stand and/or walk for less than 2 hours in an 8-hour workday; occasionally lift and carry less than 10 pounds; she required the use of a prescription assistive devise and could only walk 30 feet without such a devise; only occasionally reach, handle, finger, feel, push, or pull; occasionally operate foot controls; occasionally balance or climb stairs with a solid railing; never stoop, kneel, crouch, craw[l], or climb ladders, scaffolds, or stairs without a hand rail; never be exposed to unprotected heights, moving mechanical parts, humidity, wetness, pulmonary irritants, temperature extremes, or vibrations; occasional exposure to operating motor vehicles; she could only have moderate exposure to noise; she would be off task 25% of a workday; and she would miss at least 8 days of work per month (Exhibit 8F). *Despite Dr. Kelly's status as a treating physician, his assessment is not supported by the record, and thus, is not persuasive*. Specifically, the evidence does not support lifting, sitting, standing, or walking restrictions to the extent opined. Similarly, there is no objective evidence to support the findings of a need for missed days, time off task, or the need for an ambulatory aide. For example, in November 2016 and May 2017, the claimant denied severe headaches, unusual weight gain or loss, nausea, vomiting, diarrhea, change in bowel habits, change in urinary habits, frequency of urination, urgency, burning, painful urination, pressure, involuntary loss of urine, chest pain, palpitations, shortness of breath, cough, edema, fatigue, or heat or cold tolerance (Exhibit 1F/1-2, 4.) In fact, Dr. Hendricks found all other systems were negative. Moreover, in July 2018, the same month as Dr. Kelly's assessment, Dr. Aggarwal noted normal posture, gait, and stance with no involuntary movements (Exhibit 13F/23). *Thus,*

10

> *while Dr. Kelly is the primary care physician, treating her for all of her conditions, the overall medical evidence of record simply does not support the disabling limitations he identified.*

[Tr. 18 (emphasis added).] After this exhaustive consideration and examination of Dr. Kelly's opinion regarding Rogers' physical abilities, the ALJ went on to consider mental impairments, reasoning that Dr. Kelly's highly restrictive assessment was inconsistent with Rogers' own reports from March 2018 regarding her daily activities. [Tr. 18, 250-56.]

Therefore, the ALJ properly evaluated the weight to be given to Dr. Kelly's opinion.

### III. Does Substantial Evidence Support the RFC?

In keeping with her sound-bite approach, Rogers simply argues the ALJ failed to draw an accurate and logical bridge between her RFC and the evidence, and her decision is not supported by substantial evidence. [DE 16 at 7.]

Here's the RFC arrived at by the ALJ:

> (Rogers can) perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is further limited to occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, and never climbing ladders, ropes, or scaffolds. She must avoid more than occasional exposure to weather, extreme cold, extreme heat, wetness, and humidity. She requires ready access to a restroom, but the need to use the restroom can be accommodated by the 15-minute morning and afternoon breaks and the 30-minute lunch period. She can understand, remember, and carry out simple instructions and make simple work-related decisions. She can sustain an ordinary routine without special supervision and tolerate occasional changes in work setting. She can tolerate occasional interaction with coworkers and supervisors, but no interaction with the public.

11

[Tr. 15.]   Substantial evidence supports this finding, and the ALJ did logically explain her conclusions.  For starters, this isn't a particularly stringent requirement.  "[A]n ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability."  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quotation omitted).

As to physical impairments, the ALJ considered Rogers' spinal impairment and noted a slip and fall injury in February 2013 and radiating pain in November 2015. [Tr. 16, 555-57, 582-84.]  However, the ALJ also noted that in January 2019, Rogers had no motor, coordination, gait, balance, sensory or musculoskeletal issues, and imaging of Rogers' lumbar spine was normal. [Tr. 16, 730, 351.] The ALJ also considered Rogers' pulmonary condition, noting a harsh cough but full oxygen saturation in January 2017 and no significant pulmonary clinical findings in January 2019. [Tr. 16, 379-91, 729.] The ALJ also considered Rogers' urinary disorders, noting the records reflected that Myrbetriq therapy was working well. [Tr. 16, 475, 667-70.]  While the record includes diagnoses of COPD and asthma, the ALJ found that these were managed with medication, and there have been no hospital admissions for pulmonary exacerbation, and several examinations showed normal pulmonary functioning. [Tr. 16.] Regarding musculosketal complaints, the evidence showed Rogers did not have consistent spinal or extremity deficiencies, and there is no imaging to support a skeletal or joint deficiency supporting a sedentary exertional capacity. [Tr. 16-17.]

Regarding mental impairments, the ALJ considered the January 2017 examination showing Rogers had a normal mood, affect, behavior, judgment, and thought content. [Tr. 17, 381.] The ALJ acknowledged that Rogers was hospitalized in May 2017 after intentionally overdosing on Xanax. [Tr. 17, 387-97, 424.] However, she was discharged without significant issues, and there were no subsequent threats or attempts. [Tr. 17.] Additionally, the ALJ noted that while Rogers reported extreme anxiety in June 2018, her husband of 33 years had just recently passed away at the time. [Tr. 17.]

The ALJ also considered opinion evidence from Rogers' treating physician Dr. Kelly, as well as from state agency consultants in arriving at the RFC. [Tr. 17-18.] Ultimately, the ALJ concluded that the RFC:

> is supported by normal spinal imagining, clinical findings of normal gait and extremity mobility, gastrointestinal improvement with medication, conservative pulmonary treatment with an ongoing smoking habit, the lack of hospitalization of intensive treatment for mental symptoms since the 2017 attempted suicide, and the fact that she was able to live alone with no specific evidence of daily support.

[Tr. 19.] As detailed above, this conclusion is well supported.

Rogers argues in a conclusory fashion that the ALJ did not account for her combination of impairments, "which when combined would result in a greater level of impairment than can be assessed singly." [TR 16 at 7.] But she fails to point me to anything at all in the record in support of this bare conclusion. The ALJ specifically considered whether Rogers' impairment or combination of impairments met or equaled

13

a listing, and acknowledged the need to consider all of Rogers' impairments. [Tr. 12-13.]

Rogers also cursorily states that the RFC does not account for limitations in concentration, persistence or pace. [DE 16 at 7.] The ALJ found that Rogers had moderate limitations in concentration, persistence or pace. [Tr. 14.] In making this finding, she noted that Rogers managed her household, played cards, followed written and spoken instructions, read the Bible, and watched television. [Tr. 14, 39-69, 240-41, 250-59.] The ALJ then considered further evidence in assessing Rogers' mental limitations. [Tr. 17-18.] Overall, the ALJ did an adequate job assessing Rogers' limitations and shaping an RFC. *See, e.g., Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (finding a limitation to simple judgment "specifically accounts for . . . concentration difficulties"); *Pytlewski v. Saul*, No. 18-3673, 2019 WL 5884542, at *3 (7th Cir. Nov. 12, 2019) (upholding a RFC for simple, routine, repetitive tasks and simple, work-related decisions because it was supported by the State agency doctors' narrative and checklist assessments). I therefore conclude that the ALJ adequately grounded her RFC determination in medical evidence.

## Conclusion

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Tammie Rogers' application for disability insurance benefits and supplemental security income is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: May 5, 2021.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**